IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HILTON MINCY,** | : | **CIVIL ACTION NO. 1:05-CV-1458** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **EDWARD J. KLEM, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is defendants' motion for summary judgment (Doc. 46) pursuant to FED. R. CIV. P. 56.  In his amended complaint (Doc. 25), plaintiff Hilton Mincy ("Mincy") alleges violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution under theories of retaliation, conspiracy and due process.[1]  Mincy concedes that he has no right to relief under the Eighth Amendment or pursuant to a conspiracy to retaliate theory.  (Doc. 55-1. pp. 28-29).  Consequently, all defendants will be granted summary judgment on the Eighth Amendment and conspiracy to retaliate claims.  The First Amendment

---

[1] In addition, plaintiff's counsel argues that Mincy's Fifth Amendment due process rights were violated.  (Doc. 55-1, p. 23).  Mincy did not allege a Fifth Amendment violation in his amended complaint (Doc. 25), and, hence, this claim has been waived.  Krouse v. Amer. Sterilizer Co., 126 F.3d 494, 499 (3d Cir. 1997); Protocol Electronics, Inc. v. Transolutions, Inc., No. Civ. 03-4162, 2005 WL 1106132, at *5 (D.N.J. April 29, 2005) ("[I]t is impermissible, without leave of court, to raise new claims for the first time on summary judgment.").  Even in the absence of waiver, the claim has no merit.  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Summary judgment will be granted as to this claim without further discussion.

retaliation claims against defendants Datchko, Robinson, Farber, Kane, Spaide, Williams, Cudwaidie, Bitner, and Klem will be considered. The Court will also address the Fourteenth Amendment due process claim against defendants Kane, Spaide, Williams, Cudwaidie, Bitner, and Klem. For the reasons set forth below, the motion for summary judgment will be granted.

I. **Statement of Facts**

On April 3, 2005, while incarcerated at the State Correctional Institute at Mahanoy, Mincy found pebbles in his food. (Doc. 25, p. 7). He believes that officers named as defendants in a separate lawsuit, Mincy v. Chmielewski, 1:05-CV-292, "were the ones who may had [sic] put the 'rocks' in his tray." (Doc. 25, p. 7). On or about April 11, 2005, he filed grievance #114795 concerning this incident. (Doc. 25, p. 7; Doc. 60-2, p. 42). In addition, on April 15, 2005, Mincy's sister contacted the prison concerning the incident and informed prison administration that she considered this attempted murder. (Doc. 60-2, p. 31). On April 18, 2005, Defendant Datchko ("Datchko"), who was the security office lieutenant responsible for investigating the incident, received an electronic mail message from prison administration about Mincy's sister's phone call. (Doc. 50-2, p. 13). On that same day, he interviewed Mincy and ordered an investigative search of his cell to determine whether the pebbles came from inside the cell. (Doc. 50-2, pp.16-17; Doc.

50-5, p. 22; Doc. 60-2, p. 31).[2] The Restricted Housing Unit ("RHU") cells are constructed of cement and inmates frequently destroy the surfacing of the cells which allows them to dig up small pebbles or rocks. (Doc. 50-5, p. 22). The search was conducted by defendants Robinson and Farber, correctional officers. (Doc. 50-6, p. 12). No pebbles were found in the cell. (Id.). Throughout the course of the investigation, Datchko also interviewed Mincy's cellmate, the kitchen steward who delivered the food tray to the cell, the kitchen supervisor and other staff members. These interviews revealed that the food trays were sealed and placed on a locked cart when they left the kitchen and that they were still sealed when they were delivered to the cell. (Doc. 50-2, p. 21; Doc. 60-2, p. 32). Ultimately, defendant Datchko concluded that because the food trays were sealed when they were delivered to Mincy's cell that the pebbles must have come from food processing. (Doc. 60-2, p. 33). He denied the grievance. Mincy unsuccessfully appealed to the next level or review. He then appealed the grievance to final review. On August 12, 2005, he was notified that his appeal was denied. (Doc. 25, p. 12). Although the investigative search did not produce pebbles, Robinson and Farber found white tablets on Mincy's desk and a "transport device" under the toilet.[3] (Doc. 50-6, p. 12). While the transport device was easily identified as contraband (Doc. 50-5, pp. 28-29),

---

[2]An investigative search is an elaborate search that is more thorough than monthly or random searches. Typically, it must be authorized by the security officer or the security supervisor. (Doc. 50-5, p. 19).

[3]The transport device is identified as a device "constructed from [an] altered toothpaste container and string in excess of 25 feet in length." (Doc. 50-6, p. 12).

further investigation was necessary to determine whether Mincy properly possessed the white tablets.  When questioned, he indicated that the pills belonged to his former cellmate, Craig Alford.  (Doc. 50-5, p. 21).  Robinson and Farber asked defendant Wislosky, a nurse working in the medical department, to identify the pills.[4]  (Doc. 50-7, p. 3).  She consulted the IDENT-A-DRUG manual, and by evaluating the shape, color and markings on the pill, concluded that it was potassium chloride.  (Id. at p. 4, ¶ 6).  She was then asked to determine whether Mincy had a prescription for potassium chloride.[5]   She confirmed that he did not have such a prescription.  (Id. at ¶ 7).   If an inmate possesses medication that has not been prescribed for him by an institution physician, it is considered contraband.  (Id. at ¶ 8).

   Mincy was charged in Misconduct No. A632920 with possession of contraband.  (Docs. 50-6, p. 12; 50-8, p. 36).  Along with the misconduct, he was given an inmate request for representation and witnesses.  (Doc. 50-6, p. 13).  He indicated that he did not need representation, but that he would like to call several witnesses.  (Id.).  He also prepared a written statement in which he alleges that the search was in retaliation for grievances that he has filed against the prison.  (Docs.

---

[4] "[C]orrections officers frequently ask members of the nursing staff to identify medication, discovered as a result of a cell search, to verify whether an inmate has been prescribed a particular medication.  Members of the nursing staff are permitted to verify limited information of this kind for security purposes."  (Doc. 50-7, p. 5 ¶ 13).

[5] Prior to this inquiry, she was not aware that the pills came from Mincy's cell.  (Doc. 50-7, p. 4, ¶ 11).

50-6, p. 14; 55-14, p. 2). Mincy claims that the pills must have been prescribed for his cellmate, Craig Alford, who simply abandoned them in the cell when he was released back to general population. (Id.).

A misconduct hearing was held on April 25, 2005, before defendant Hearing Examiner Kane. (Doc. 50-6, p. 12). The witness requests were considered by defendant Kane and rejected as unnecessary to establish the facts. (Doc. 50-8, pp. 23-26). "According to the policy [found at DC-ADM 801], the hearing officer has the discretion to approve the presence of any staff member or witness only if the staff member or witness has knowledge of the incident and only if the testimony is needed to establish guilt or innocence." (Docs. 50-10, p. 5, ¶ 11; 50-10, p. 4, ¶ 9). The hearing examiner considered defendant Robinson's version of the events, as he authored the misconduct. Defendant Kane also considered Mincy's witness requests, Mincy's written version of the events and Mincy's testimony. The hearing examiner set forth the following findings of fact:

> He essentially states that he had no knowledge of the pills being in his cell. They had to be left by his cellmate a few days before the search, when he was released. His cellmate was DT 2486. He states that the transportation device found was already there when he moved in. In the case of the transportation device, he never informed staff that it was there. He feels that this is in retaliation for a lawsuit and grievance he filed. He also disputes the amount of the pills that were found.
>
> I checked with medical concerning his claim of the pills belonging to DT 2486 and was told that the potassium chloride pills found in Mincy's cell were not prescribed to Mincy or DT 2486. This was shared with Mincy. At this time Mincy refused to stay and left the hearing.

5

> I find for the officer's report over the inmate's denial that his cell was searched and potassium chloride were found, along with a cell-to-cell transportation device. I find that since Mincy is not prescribed the pills and neither was his last cellmate, they are contraband. I also find that the transportation device found is also contraband. The amount of pills found, whether it was one or one thousand is not a prejudicial error. He is not to possess any of the pills and he did possess them. I find him guilty of the charge.

(Doc. 50-6, p. 11). The contraband was confiscated and Mincy was given sixty days of disciplinary custody. (Id.) Because he left prior to the conclusion of the hearing, defendant Kane was unable to inform him of his decision and the reasons behind it, was not able to provide him with a copy of the report, and could not advise him of his appeal rights. (Doc. 50-8, pp. 30, 40-45).

Mincy appealed the decision to the Program Review Committee ("PRC"). "The PRC that hears misconduct appeals is a standing committee at the institution. The membership of the committee rotates weekly and meets once a week." (Doc. 50-9, p. 3, ¶ 4). The committee does not select the appeals it reviews. (Doc. 50-14, p. 3, ¶ 4). Rather, their docket includes all appeals filed by noon on the day preceding the pre-scheduled weekly PRC committee meeting. (Id.). At the time of Mincy's appeal, defendants Spaide, Williams, and Cudwadie, were sitting on the PRC. (Doc. 50-6, p. 8). He claimed, *inter alia*, that there were procedural violations and that defendant Kane found him guilty in retaliation for having filed a lawsuit against him. (Docs. 50-6, p. 9; 50-9, p. 4). He also complained that he did not have a copy of defendant Kane's report. "The three valid bases for an appeal to the PRC are: (1) the procedures employed were contrary to law, Department directives, or

regulations; (2) the punishment is disproportionate to the offense; and/or (3) the findings of fact were insufficient to support the decision." (DC-ADM 801, Inmate Discipline, Doc. 50-9, p. 26). The committee concluded that no procedural violations occurred at the misconduct hearing level. Further, because Mincy failed to produce any new evidence that would warrant reconsideration, the decision of the hearing examiner was sustained. (Doc. 50-6, p. 8).

Mincy next forwarded a letter to defendant Klem, Superintendent at SCI Mahanoy, which defendant Klem construed as a misconduct appeal. (Doc. 50-6, p. 7). He again complained about hearing irregularities and stated that defendant Kane refused to give him a copy of the hearing examiner's report. (Id.). After reviewing the pertinent documentation, on May 3, 2005, defendant Klem concluded as follows:

> My review of the above-cited documents fails to disclose any procedural violations which would have prevented you from receiving a fair and objective hearing. In this case, the Hearing Examiner was correct in his ruling that the requested witnesses were not needed to establish the facts.
>
> The Hearing Examiner considered your denial of the charges and also considered the report of the citing staff member. The Hearing Examiner found the citing staff member's report over your denial. This is viewed as sufficient evidence to support a finding of guilt. There is not evidence that staff acted in a retaliatory fashion.
>
> The finding and sanction of the Hearing Examiner are therefore sustained. Your appeal to my office is denied.

(Doc. 50-6, p. 6). On that same date, he sent a written request to defendant Kane for a copy of his hearing report. (Doc. 50-8, p. 60). On May 11, 2005, defendant Kane

7

notified him that there was no copy provided because he left the hearing early and, unfortunately, because he did not keep copies of his reports he could not give him one.  Mincy filed another appeal of the same misconduct on May 24, 2005.  (Id. at pp. 4-5).  Defendant Klem advised him that he had already filed an appeal and that no further action would be taken.  (Id. at p. 3).

He pursued his final level of appeal to the Chief Hearing Examiner, defendant Bitner.  (Doc. 50-6, p. 2).  On June 14, 2005, defendant Bitner denied his appeal for the same reasons cited during the prior levels of review.  (Id.).

In the matter *sub judice*, Mincy asserts that the search ordered by Datchko, and carried out by Robinson and Farber, and the misconduct that he received as a result of the search, were in retaliation for the filing of the grievance and his federal lawsuit, Mincy v. Chmielewski, 1:05-CV-292.  (Doc. 25, pp. 1, 3, and 5).

He contends defendant Kane found him guilty of the misconduct charge in retaliation for having filed a federal lawsuit against him and in an attempt to deny him access to the law library.  Additionally, he alleges that defendant Kane committed numerous procedural due process violations including denial of witnesses and failure to provide him with a copy of the misconduct hearing decision.

It is also alleged that defendants Spaide, Williams, Cudwadie, Bitner and Klem retaliated against him because of the federal lawsuit he filed against their coworkers and violated his due process rights.  (Doc. 25, pp. 5-6).

The federal lawsuit to which Mincy refers, Mincy v. Chmielewski, 1:05-CV-292, was filed on February 9, 2005. (Doc. 50-3). In March 2005, Mincy mailed multiple copies of the complaint to defendant Klem for service on the named defendants. Klem forwarded the documents to Edward R. Martin, Assistant to the Superintendent. (Doc. 50-13). Mr. Martin is the litigation coordinator to whom all state and federal court complaints against institution personnel are forwarded for processing. (Id. at p. 3, ¶ 2). When a federal lawsuit is served by the United States Marshal's Service, Mr. Martin prepares a litigation notice[6] and forwards the notice and the original complaint to the Department of Corrections' Office of Chief Counsel. (Id. at ¶ 12). Mincy's sister also mailed a set of documents which were received on March 14, 2005. Since the court had not ordered service of the complaint, and due to other service irregularities, all documentation was returned to Mincy in March 2005. (Doc. 50-13, p. 7, ¶ 18, p. 16). Martin did not distribute copies of the complaint to any of the named defendants at that time. (Id. at p. 7, ¶ 18).

The official court docket indicates that the Court screened Mincy's complaint on April 15, 2005. (Doc. 50-3, p. 14). The court subsequently ordered Mincy to file an amended complaint, which he filed on May 2, 2005. (Id.). He then moved to amend the amended complaint and filed another amended complaint. (Doc. 50-3, p.

---

[6]"The litigation notice indicates the method of service, the date of first service, the names of the individuals actually served, whether the inmate has attempted to exhaust administrative remedies, and other pertinent data sought by Department counsel." (Doc. 50-13, p. 5).

14). By order of July 18, 2005, the court directed the United States Marshal's Service to serve the named defendants. (Id.). A waiver of service of summonses was executed by defendants on August 19, 2005. (Id. at p. 12).

## II. Standard of Review

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 314 (M.D. Pa. 2004). Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Township, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004). "Such affirmative evidence--regardless of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989). Only if this burden is met can the cause of action proceed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P. 56(c), (e).

## III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a civil rights claim, the plaintiff must show a "deprivation" of a constitutional or statutory right by a person "acting under color of state law." Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

### A.   First Amendment Retaliation

The First Amendment offers protection for a wide variety of expressive activities. See U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987).

Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken

against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

### 1. *Defendants Datchko, Robinson, and Farber*

Mincy argues that the investigative search, ordered by Datchko and conducted by Robinson and Farber, was in retaliation for the filing of grievance #114795, which alleged that he found pebbles in his soup and resulted in the issuance of a false misconduct. That Mincy engaged in protected conduct cannot be reasonably disputed. The filing of a grievance clearly falls within the ambit of the First Amendment. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).

Mincy then must establish whether the actions purportedly taken in retaliation for this conduct are sufficiently "adverse" to constitute constitutionally cognizable infringements. Official actions are considered "adverse" if they would be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Allah, 229 F.3d at 225. He alleges that an investigative search, which resulted in the issuance of a false misconduct, was conducted because of his filing of a grievance and a lawsuit. Allegations of being falsely charged with misconduct in retaliation for filing a grievances and lawsuit generally satisfy this standard. See Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (finding that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment).

The third threshold test requires the prisoner to show "a causal link between the exercise of his constitutional rights and the adverse action taken against him."

Rauser, 241 F.3d at 333.  To demonstrate this link, the prisoner must prove that his constitutionally protected conduct was "a substantial or motivating factor" in the decision to discipline him.  Id. (citing Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)).  Mincy primarily relies on the temporal proximity between his protected conduct and the adverse actions.  Temporal proximity may satisfy the causation element of a retaliation claim only when "the timing of the alleged retaliatory action [is] 'unusually suggestive' of retaliatory motive. . . ."  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); see also, Rauser, 241 F.3d at 334.

The investigative search, which took place on the same day that Mincy was interviewed by defendant Datchko about his grievance, was sufficiently proximate in time to the filing of the grievance to establish that the protected conduct was a substantial or motivating factor in the decision to search his cell.  Once this test is met, the burden then shifts to the defendant to prove by a preponderance of the evidence that the same action would have been taken even in the absence of the protected activity.  Id. (quoting Mount Healthy Bd. of Ed., 429 U.S. at 278).  Because of the "deference" courts should afford prison officials, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.  Mincy argues that the investigative search was in violation of prison policy in that such searches are limited in nature and do not apply to the type of a situation presented here.  The Court is unpersuaded by this argument.  The deposition testimony of Datchko and Robinson establishes the

13

legitimate penological purpose of the cell search. (Docs. 50-2, 50-5). Defendant Datchko was conducting an investigation of foreign matter found in a food tray delivered to the RHU. According to the record, the opportunity to place anything in food trays delivered to the RHU is severely limited because prior to delivery to the RHU, kitchen staff seals the food trays and places them in a locked cart and the trays are not opened until received by the inmates. Datchko represents that the search was conducted to eliminate the possibility that the pebbles came from inside Mincy's cell. Robinson testified that he and Farber were specifically directed to search the cell for pebbles. Mincy fails to come forward with evidence that would demonstrate that the cell search was improperly motivated.

Nor is there any indication that the issuance of the misconduct was improperly motivated. It is undisputed that contraband was found in the cell during the course of the investigative search. At no time does Mincy contend that defendants Datchko, Robinson, or Farber placed the contraband in the cell. He merely argues that the contraband did not belong to him. It is clear that the investigative search of Mincy's cell, which resulted in the issuance of a misconduct, advanced the legitimate penological purpose of investigating a grievance and would have been conducted regardless of any alleged improper motive. Defendants Datchko, Robinson and Farber are entitled to an entry of summary judgment.

    2.    *Defendants Spaide, Williams, Cudwadie, Kane, Bitner and Klem*

It is Mincy's contention that defendant Kane found him guilty of misconduct in retaliation because he named him as a defendant in <u>Mincy v. Chmielewski</u>, 1:05-

14

CV-292. The filing of a lawsuit is protected conduct that clearly falls within the ambit of the First Amendment. See Mitchell, 318 F.3d at 530. However, Mincy fails to demonstrate a causal link between the protected conduct and adverse action. Although the action was initiated in federal court in February 2005, defendant Kane testified that he was not aware of the lawsuit at the time the hearing was conducted. (Doc. 50-8, p. 29). This is supported by the official court docket in Mincy v. Chmielewski, 1:05-CV-292. The docket indicates that the amended complaint was not served upon the named parties until August 2005, well after the April 2005 hearing. He fails to establish that defendant Kane received notice prior to this time. In the absence of evidence that the lawsuit was the cause of defendant Kane's decision to find Mincy guilty of the charged misconduct, defendant Kane is entitled to summary judgment. See Wicks v. Shields, 181 F. Supp.2d 423, 426 (E.D.Pa. 2002).

Likewise, there is no evidence that either defendants Bitner or Klem, both of whom are also named as defendants in Mincy v. Chmielewski, 1:05-CV-292, had notice of the lawsuit pending against them at the time that they disposed of Mincy's appeals. Consequently, they are also entitled to an entry of summary judgment.

Mincy also alleges that Spaide, Williams and Cudwadie, members of the PRC, conducted a meaningless review of his appeal in retaliation for the lawsuit that he filed against their coworkers. The causation link is even weaker with these defendants. None of them are named defendants in Mincy v. Chmielewski, 1:05-CV-292, and the record is devoid of evidence that they had any notice of the action. In light of the complete absence of any evidence that the plaintiff's lawsuit Mincy v.

Chmielewski motivated these defendants to affirm the decision of the hearing examiner, they are entitled an entry of summary judgment. See Wicks, 181 F. Supp.2d at 426.

Even if Mincy were to have met the causation test, defendants would still be entitled to summary judgment because they have established a legitimate penological purpose for their actions. The record clearly establishes that there was a basis for the misconduct report and that there were legitimate bases for making rulings at each stage of the misconduct process. (Doc. 50-8, pp. 26-27; Doc. 50-9, pp. 5-6; Doc. 50-10, pp. 3-5).

B.   Fourteenth Amendment Due Process

Mincy's contention that his due process rights were violated in the context of his misconduct hearing requires a determination of whether he had a protected liberty interest and, if so, what process was mandated to protect it. See Sandin v. Conner, 515 U.S. 472, 484 (1995); Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). Importantly, due process requirements apply only when the prison's actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (1995). "[T]he baseline for determining what is "atypical and significant"-the "ordinary incidents of prison life"-is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997)(quoting Sandin, 515 U.S. at 486).

Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. Sandin, 515 U.S. at 486; see Griffin, 112 F.3d at 706-07 (finding that fifteen month period of administrative custody did not deprive prisoner of a liberty interest). The disciplinary sanction at issue, sixty days of disciplinary segregation, does not constitute "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483. Moreover, at the time of his hearing, Mincy was already in disciplinary custody and confined in the RHU. (Doc. 50-6, p. 12). Hence, defendants are entitled to an entry of judgment on Mincy's due process claim.[7]

An appropriate order will be entered.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     February 1, 2007

---

[7] Mincy fares no better in attempting to set forth an obstruction of the grievance procedure claim. Prisoners do not have a constitutional right to prison grievance procedures. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U. S. 119, 137-38 (1977); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994) Buckley v. Barlow, 997 F.2d 494 (8th Cir.1993)); Wilson v. Horn, 971 F. Supp. 943, 947 ( E. D. Pa. 1997).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HILTON MINCY,** | : | **CIVIL ACTION NO. 1:05-CV-1458** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **EDWARD J. KLEM, et al.,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 1st day of February, 2007, upon consideration of defendants' motion for summary judgment (Doc. 46), and in accordance with the foregoing memorandum, it is hereby ORDERED as follows:

1. The motion (Doc. 46) for summary judgment is GRANTED.

2. The Clerk of Court is directed to ENTER JUDGMENT in favor of defendants and against plaintiff.

3. The Clerk of Court is further directed to CLOSE this case.

                                              S/ Christopher C. Conner
                                              CHRISTOPHER C. CONNER
                                              United States District Judge